ANTON LEIWEKE, Respondent, v. HUGH JORDAN *et al.,* Appellants.

Kansas City Court of Appeals, December 3, 1894.

1. **Mortgage:** INFORMAL: INTENTION. Every express executory agreement in writing whereby the contracting party sufficiently indicates an intention to make some particular property therein described a security for a debt, creates an equitable lien enforceable by the orig-

inal contractor, his legal representatives and purchasers with notice. The intention, not the form, is the matter of importance, and an instrument set out in the opinion is *held* to be an equitable mortgage.

2. **Vendor and Vendee**: COPURCHASER FURNISHING MONEY. A copurchaser who furnishes an excess of money for the purchase price of real estate with the understanding he is to be reimbursed for the same out of proceeds of sale, though not, strictly speaking, a vendor of such real estate, occupies a similar relation.

3. **Construction**: RULE. If a contract admits of more than one construction, that construction should be adopted which will make the contract effectual and not render it inefficacious or nullified.

*Appeal from the Osage Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*J. W. Zevely* and *Silver & Brown* for appellant.

(1) One who lends money to another to enable him to pay the purchase price of the land stands in the same position as any other creditor, and a promise to give a lien in such case is within the statute of frauds. *Wooldridge v. Scott*, 69 Mo. 669; *Price v. Estill*, 87 Mo. 386; *Price v. Courtney*, 87 Mo. 395. (2) It will be observed that the evidence nowhere shows a lien agreement or a promise to give such lien. The instrument itself of December 30, 1886, makes no reference to a lien, and does not create one. (3) The respondent is restricted, so far as any relief on his part is concerned, to the aforesaid written contract of December 30, 1886, and inasmuch as it creates no lien he can enforce none. *Hagar v. Hagar*, 71 Mo. 610; *Chrisman v. Hodges*, 75 Mo. 413; *State ex rel. v. Hoshaw*, 98 Mo. 358; *Stone v. Pennock*, 31 Mo. App. 544; *Woodlock v. Meyerstein*, 5 Mo. App. 591; *Christy v. Price*, 7 Mo. 431; *Davidson v. Bierman*, 27 Mo. App. 655; *K. C. Co. v. Brundage*, 25 Mo. 268; *Suits v. Taylor*, 20 Mo. App. 166; *Ship v. Snyder*, 25 S. W. Rep. 900.

*Ryors & Vosholl* for respondent.

(1) The evidence shows a joint holding of land under an agreement in the nature of a partnership, and the decree is right. Leading Cases in Equity, White & Tudor; 1 Hare & Wallace Notes, top page 729; notes to Lester & Foxcraft. In all such cases the controlling point in determination of the cause is: "Who furnished the purchase money." *Baumgardner v. Guenfelt*, 38 Mo. 36; *Bowen v. McKean*, 82 Mo. 594; *Shaw v. Shaw*, 86 Mo. 595. (2) The statute of frauds has no application. 1 White & Tudor, *supra*, top p. 231; note to *Lake v. Gibson; Dale v. Hamilton*, 5 Hare, 369; Browne on Stat. of Frauds, secs. 259, 260; 3 Wait's Actions and Defenses, p. 187; *Hunter v. Whitehead*, 42 Mo. 524. (3) The note read in evidence is clear proof that Jordan attempted to burden this particular land with the payment of a specific debt. Between parties equity will enforce such attempts. 13 Am. and Eng. Encyclopedia, 608. If the intention is apparent, the form of the contract is of small importance." Am. and Eng. Encyclopedia, *supra*, note 4, and authorities cited; *Blackburn v. Tweedie*, 60 Mo. 505; *Martin v. Nixon*, 92 Mo. 26.

GILL, J.—Defendant's statement of the case is substantially correct, and with some little modification we adopt it.

This is a suit in equity brought in the Osage circuit court on October 26, 1893, to enforce, on plaintiff's behalf, an alleged lien against certain lands set out in the petition. Plaintiff's claim is that he and defendant Jordan, in 1883, entered into a contract by which they were to jointly buy lands for speculative purposes; that the plaintiff paid more than his proportion of the purchase money, and is entitled to a lien against the

land for the money so advanced by him to defendant Jordan. Before the bringing of suit, Jordan had made an assignment for benefit of creditors to Branson, and the latter was joined as defendant in this suit. Service of process was had on Jordan, by publication, on the ground of nonresidence, and by personal service on Branson as assignee.

Branson alone answered, and in his answer, after admitting his appointment and qualification as assignee, denied generally all the allegations of the petition.

Plaintiff was introduced on his own behalf as a witness, and was, in fact, the only witness who testified at the trial. His testimony was to the effect that in 1883 he and Jordan entered into a verbal contract by which they were to buy lands and sell at a profit; Jordan had no money at the time and it was understood that plaintiff was to furnish the purchase price of the property, which was to be paid plaintiff when sales were effected; that this contract was made in 1883; lands were bought and the contract kept alive until December 30, 1886, when a settlement was had, which resulted in Jordan executing to the plaintiff the following instrument of writing:

"$600.00.            LINN, Mo., December 30, 1886.

"Twelve months after date I promise to pay to the order of A. Leiweke six-hundred dollars, for value received, negotiable and payable without defalcation or discount, and with interest from this —— at the rate of eight per cent. per annum, and if the interest be not paid annually to become as principal and bear the same rate of interest, and being for the purchase money of my interest in the north half southeast quarter, south half northeast quarter, section 14, southwest southeast quarter section 15, west half northeast quarter, southeast, northeast quarter and southeast quarter of section 22; the southwest quarter section 10, southwest north-

west quarter, northwest southwest quarter, west half northeast southwest quarter section 16, all in township 44, of range No. 7 west, situate in Osage county, Missouri.　　　　　　　　　　　HUGH JORDAN."

Defendant offered no evidence. The court made its finding for plaintiff and granted the relief prayed for him, viz.: a decree for the sale of Jordan's undivided half of the land and the application of the proceeds to the payment of the amount called for by the instrument above set out. The defendant assignee has appealed.

The trial court found and adjudged that, by the execution of the instrument of writing quoted in the foregoing statement, Jordan attempted to, and did, create an equitable charge or lien in plaintiff's favor on the real estate named therein. And we are of the same opinion. We think, when Jordan made that writing and delivered it to the plaintiff, it was clearly the intention to charge his half interest in the real estate therein described (and which he and plaintiff had purchased in common) with a lien for the payment of said $600. Though not in form a legal mortgage, it must yet, under the circumstances of the case, be regarded an equitable mortgage. Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property therein described, a security for a debt, creates an equitable lien upon the property thus described; which, too, is enforcible against the property, not only while held by the only original contractor, but as well in the hands of his heirs, administrators, voluntary assignees and purchasers with notice. If the intention is apparent, the form of such contract is of small importance. 3 Pom. Eq. Juris. [2 Ed.], sec. 1235; 13 Am. and Eng. Encyclopedia of Law, 608; *Blackburn v. Tweedie* 60 Mo. 505; *McQuie v. Peay*, 58 Mo. 56;

*Martin v. Nixon,* 92 Mo. 26; *Peckham v. Haddock,* 36 Ill. 38; *Bryant v. Stephens,* 58 Ala. 636.

That it was the intention of Jordan, in the execution of the paper, to pledge his interest in the property for the payment of his obligation to plaintiff, is manifest when we read it in connection with the circumstances of the transaction. In the beginning of this joint enterprise between Jordan and Leiweke, it was understood that the latter would have to furnish the necessary means to buy the lands, and it was agreed that as the property was sold Leiweke should first get back the money he had advanced; so then it was the natural and proper thing, when they came to a settlement of the joint business in December, 1886, and Jordan was found indebted to Leiweke and the giving a note was determined on, that he (Jordan) should have provided for the security of his associate in business just as he had all the time intended.

The conduct, too, of the plaintiff and Jordan after executing the instrument of December, 1886, shows, unquestionably, that we are right in declaring the force and effect thereof. For, when some of the lands were thereafter sold to third parties, Jordan conceded plaintiff's claim to the purchase money and his (Jordan's) portion was credited on the obligation.

Besides all this, what was the design of such statement in the body of the note, that it was given "for the purchase money of my interest in certain lands" (describing them), if not to indicate a purpose of giving the plaintiff a lien or security for the money he had advanced for the purchase of the land? If not for that purpose it was a mere nullity. But we should so construe the terms of a contract as to avoid this result. The rule is: "If a contract admits of more than one construction, one of which will render it inefficacious, or nullify it, that construction should be adopted

which will carry it into effect; or, as was said by Lord MANSFIELD "the parties necessarily understood and used the language in that sense which made their deed effectual." *Peckham v. Haddock, supra.*

It would seem that the plaintiff and Jordan, when stating in the face of this note that it was given for the purchase money of lands therein described, had in view the right of a vendor to retain a lien for the purchase price of property sold. And, though plaintiff might not, strictly speaking, be regarded as Jordan's vendor of the real estate, he (plaintiff) yet occupied a similar relation. He had furnished the money to buy land, the title of which had been placed in Jordan. Plaintiff then had, to say the least, a moral right to insist that the land thus bought with his money should be charged with its repayment.

Of all the cases examined, we find none so nearly in point as *Bryant v. Stephens, supra;* and, though its soundness was subsequently questioned by the same court (composed of different judges, *Tedder v. Steele,* 70 Ala. 347), we consider the reasoning of the first the better, and cite the opinion in support of our position.

In the view we have taken of this case, many of the points mentioned in defendant's brief need not be noticed. Plaintiff's rights are not to be limited by the mere fact that he advanced or loaned the money to pay for land bought by Jordan, and hence *Wooldridge v. Scott,* 69 Mo. 669, does not apply. Plaintiff has more than this upon which to base his lien. He secured an express written contract from Jordan which we have decided gave to plaintiff the right of an equitable mortgage.

The judgment is for the right party and will be affirmed. All concur.