CHARLES KLEIMANN, Respondent, v. ANNA GEISELMANN *et al.*, Appellants.

St. Louis Court of Appeals, May 19, 1891.

1. **Evidence :** SECONDARY EVIDENCE. If it be shown that a writing was left with a designated person, and could not be found notwithstanding that he had made a diligent search therefor, a sufficient foundation is laid for the introduction of secondary evidence of it.

2. **Practice, Appellate :** PROCEEDINGS IN EQUITY : ADMISSION OF IRRELEVANT EVIDENCE. The admission of irrelevant evidence in an equity suit will not furnish ground for the reversal of a judgment upon appeal ; such evidence will simply be disregarded in the determination of the facts by the appellate court.

3. **Subrogation.** A decedent devised realty to his wife and the heirs of her body, thus vesting in her a life-estate, but even that was subject to homestead rights of his children. At the time of his death the realty was incumbered by a deed of trust which was subsequently paid with money advanced by one G. for that purpose at the instance of the life-tenant, the widow. To secure this advance G. took a new deed of trust made by the widow at the time of the payment of the other, but both G. and the widow acted upon the belief that the latter had acquired the absolute title to the land under the will of her husband, and that the new deed of trust would be a better security to B. than the transfer of the old one. *Held*, that G. occupied the position of a mere volunteer at least as against all the parties in interest but the widow, and that he was not entitled to be subrogated to the lien of the deed of trust which had been paid.

45 497
54 282
114m440
45 497
66 433
45 497
68 80
45 497
139m500

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

REVERSED ( *and certified to supreme court* ).

*James Carr*, for appellants.

*Lubke & Muench*, for respondent.

ROMBAUER, P. J.—Upon a careful consideration
of the facts involved in this case, we heretofore ordered
its transfer to the supreme court, as a cause "involving
title to real estate" within the meaning of that phrase
in the constitution, as defined by the last controlling
decision of that court in *Gardner v. Terry*, 99 Mo. 523.
The supreme court remanded the cause to us, and as
such order is necessarily equivalent to an adjudication
that no title to real estate is involved therein, we proceed to determine the cause as it is our duty to do.

The object of the petition is to obtain a decree,
declaring that a certain deed of trust executed by John
H. Geiselmann is a subsisting lien on certain real estate,
and that the plaintiff is the owner of that lien, and to
foreclose the lien in this proceeding.    The petition states
that this deed of trust was executed by Geiselmann to
secure the payment of a note of $1,500 to one Reinhardt ;
that the said Geiselmann afterwards "died, leaving
Anna Geiselmann, his widow, and the other defendants,
his children and heirs at law, and leaving also a last
will, duly probated on September 9, 1882, whereby he
bequeathed the property in question to his said widow,
and to the heirs of her body forever ; that, at the time
of his death, said Geiselmann occupied a part of the
buildings on the land as a homestead, the residue being
occupied by his tenants ; that the debt and interest,
amounting to $1,600, remained unpaid on or about
January 5, 1884, and said Reinhardt threatened, and
was entitled, to foreclose the deed of trust, unless his

debt be secured to him, and the defendant, Anna Geiselmann, being executrix of the mortgagor's last will, and representing herself to one Fredericka Werk as the devisee in fee of the equity of redemption in said real estate, fully empowered to pass and grant title to the fee in said property and to renew said mortgage, and to keep the lien thereof in force and effect, applied to said Fredericka Werk to pay and furnish to Reinhardt the amount of the mortgage debt, and caused her to believe that, upon her furnishing such money, said deed of trust could and would be kept alive by a new mortgage of said Anna Geiselmann alone.

"That, relying upon and believing such representations, said Fredericka Werk, without intention on the part of herself or Mrs. Geiselmann to release, arrest or defeat the lien of the deed of trust, furnished the sum of $1,600, then due to Reinhardt, 'and thereupon received another and new deed of trust, executed by Mrs. Geiselmann extending such debt for two years, but without releasing the original deed of trust.

"That this new deed of trust was executed for the sole benefit of the widow and heirs of John H. Geiselmann, deceased, with the intent of all parties thereto to merely keep and enforce, continue and extend, the debt and lien on the old deed, and of keeping the equity of redemption therein from being foreclosed and lost.

"That, on April 30, 1888, the secured debt remaining still unpaid, Mrs. Fredericka Werk caused the property to be advertised and sold pursuant to powers of sale given, became the purchaser at the sale, had title conveyed to her by the trustee, and said Anna Geiselmann thereupon attorned and delivered possession to her.

"Thereafter, on January 9, 1889, in payment of a just debt, Fredericka Werk conveyed the property to respondent Kleimann, thereby transferring to him all her interest in the property, as also all right and equity

to subrogation to such mortgage, so that respondent is now vested with all rights respecting the same theretofore existing in said Werk.

" That, owing to a right of homestead in defendants, and for lack of power in Anna Geiselmann to convey as great an estate as had been vested in the deceased Geiselmann, the new deed of trust failed to express the intent of the parties thereto, and did not, and should not, extinguish or satisfy the first mortgage; but, by reason of the premises, plaintiff should be subrogated and substituted to all rights held by Reinhardt in the first mortgage before January 5, 1884, and the debt secured by the same should be foreclosed, unless redeemed by the Geiselmanns."

The prayer was for a foreclosure of the original deed of trust, unless paid off, and for general relief.

The answer in the case by Mrs. Geiselmann and her children was a general denial.

The court, upon the hearing, made an interlocutory decree to the effect that the plaintiff, as assignee of Mrs. Werk, was entitled to be subrogated to the rights of Reinhardt under the first deed of trust, ordered the surrender of the second note and deed of trust to Mrs. Geiselmann, and sent the case to a referee to take an account of moneys due under the first deed of trust. Upon the referee's report coming in, the court made a final decree, finding that the sum of $2,234.47 was due under the first deed of trust, and ordering its foreclosure by sale, unless the defendants redeemed the property by payment of that sum with interest. From this decree the defendants appeal, assigning for error the ruling of the court upon the evidence, and that the decree is not supported by the evidence, and is against the great weight of the evidence.

The court, upon the hearing, permitted the plaintiff to read a certified copy of the first deed of trust. It is claimed by the defendants that this was error, as the loss of the original was not sufficiently accounted

Kleimann v. Geiselmann.

for. All the evidence concurred that the original was left with the justice who prepared the second deed, and could not now be found by him, although he had made diligent search for it. There was no error in admitting the certified copy.

Reinhardt, the beneficiary of the first deed, who was a witness for plaintiff, was asked upon his cross-examination whether there was any agreement on his part to assign the first note to Mrs. Werk when it was paid to him; this question was ruled out and defend ants excepted. As there is no evidence in the record that Reinhardt ever did assign this note to anyone, and as the decree of the court is not based upon any finding that he did assign it to anyone, the inquiry was not relevant to any issue in the case. The same may be said as to the admission of evidence that Mrs. Geiselmann had attorned to the plaintiff after the sale under the second deed of trust, and of the admission of the record of the ejectment suit brought by the defendants against the plaintiff, and now pending. We may remark in this connection that the admission of irrelevant evidence can never furnish ground for reversal of a decree in equity. Proceedings in equity are reviewable in this court upon all the evidence, and if any irrelevant evidence has been admitted on trial in the court below it will be rejected in the consideration of the case upon appeal; hence, its admission works no other harm than the incumbrance of the record with matter foreign to the issues.

The plaintiff examined a number of witnesses, but the testimony of none, with the exception of Mrs. Werk, had any tendency to throw light on the main point in controversy. The justice, by whose clerk and under whose direction the second deed of trust was drawn, could not even tell at whose instance it was drawn. Reinhardt, the first mortgagee, testified that he demanded payment of the note of Mrs. Geiselmann, and thereafter she came with Mrs. Werk to his officer

and they all three proceeded to the justice, where he laid his papers on the table and received the $1,600 ; but whether the second deed of trust was drawn while he was in the office of the justice, he could not tell. Mrs. Werk testified ( by deposition ) that about five years ago she loaned $1,600 to Mrs. Geiselmann to pay the Reinhardt deed of trust. Mrs. Geiselmann told her: "You make me the loan, and you can have the trust deed which Reinhardt holds against the property ;" that no other security was offered to her, and that she went to the justice, to have the paper drawn, with Mrs. Geiselmann, and at her suggestion.    When she paid the $1,600 the justice told her : " Here are the Reinhardt papers, and everything is all right." She told the justice she wanted to have the old papers transferred to her, meaning the trust deed, and all the papers which Reinhardt held.    She took the papers home with her and kept them for four years, never looking at them, and did not find out that they were not the right papers until two months before she left St. Louis, when her agent told her that they were not the right papers.    She could not read English.

In passing on the credit to be given to this testimony, it is important to bear in mind that all the testimony concurs that the first deed of trust and note were laid down on the table in front of Mrs. Werk ; that Mrs. Geiselmann executed and acknowledged the new deed of trust in Mrs. Werk's presence ; that the latter does not testify that she took more than one deed and note, or intended to take more than one.    It is also important to consider that all the testimony concurs that the extension created by the second deed of trust was an extension for two years, with interest, payable annually ; that no interest was paid on this note, and that, at the expiration of the two years, the note, with interest compounded, was extended for two additional years.    The testimony of Mrs. Werk, therefore, that she did not look at these papers until shortly before she

left St. Louis, is opposed to all the circumstances. It is also important to consider, in that connection, that Mrs. Werk does not testify that, after she discovered the mistake, she made any inquiry whatever as to what had become of the Reinhardt note and deed of trust, but went on and foreclosed the deed of trust executed by Mrs. Geiselmann.

Mrs. Werk's evidence is directly contradicted by Mrs. Geiselmann. The latter testifies that Mrs. Werk offered to loan her the money for the purpose of paying off the Reinhardt deed of trust, and that she insisted on a new deed of trust, direct from Mrs. Geiselmann, as security for the loan, saying at the time that the old deed was no good ; that she told Mrs. Geiselmann that she had seen the will of J. H. Geiselmann in the papers; that the directions for drawing the papers were given to the justice by Mrs. Werk ; that, when the papers were drawn and delivered, and the money was paid, Mrs. Geiselmann wanted to take the old deed and note, which were lying on the table in the justice's office, but that she was told by the justice to leave them there for a few days; that she never called for them because Mrs. Werk told her shortly afterwards that they were no good. On this last point, Mrs. Geiselmann was corroborated by her daughter.

From all the evidence, direct and circumstantial, we find the following to be the facts: Mrs. Geiselmann and Mrs. Werk were, prior to and at the date of the execution of the second deed of trust, and for a long time afterwards, of the opinion that the will of J. H. Geiselmann had invested Mrs. Geiselmann, his widow, with the absolute title to this lot. Neither of them had any idea that the will gave to her a mere life-estate, much less, that even that life-estate was incumbered with the homestead right of the children. Mrs. Werk thought that a new deed of trust, executed by Mrs. Geiselmann, would give her better security for the amount advanced than a mere transfer of the old deed of trust, and besides that she wanted to make a loan for a

definite time, which object could not be accomplished by
an assignment of the Reinhardt note and deed of trust.
Mrs. Geiselmann also thought that the new deed would
give Mrs. Werk better security than a mere assignment
of the old one, believing that it added her individual
responsibility, whatever that may have been, to the
security of the land.   Both women were ignorant of the
results that would be accomplished by the transaction
being carried out one way or the other, and both, prob-
ably, relied upon the advice of the justice, who, in the
opinion of unlettered people, is always supposed to be
a competent adviser.  As the justice in question had filled
that office for many years, and is a man of well-known
probity, both parties relied upon him to draw the papers
correctly, and he unquestionably drew them according
to directions.   Mrs. Werk probably did not ascertain
that the deed did not convey such title as she expected
to get, until she came to foreclose the deed, and Mrs.
Geiselmann did not find out that the deed did not convey
such title, as she intended to convey, until some time
after its foreclosure, and, if the relief were one based upon
mistake, the facts are unquestionably such as to furnish
proper elements for a reformation of the deed in equity.
But the question is not one for reformation, but a question
of power.   A court of equity could compel Mrs. Geisel-
mann to make a contract which she intended to make,
but did not in fact make ; but no court can compel Mrs.
Geiselmann to make a contract which she had no power
to make.   If the note held by Reinhardt was paid when
he received the money, the homestead right of the
Geiselmann children at once attached to the land, freed
from any incumbrance, and nothing which Mrs. Geisel-
mann intended to do, or did do thereafter, could divest
it.   In that respect, the case is not distinguishable on
principle from the case of *Bunn v. Lindsay*, 95 Mo. 250,
where a judgment lien was, under similar circumstances,
held to have attached, in preference to a new mortgage
given for the avowed purpose of paying with the money·

raised by means of it a prior mortgage which ranked the judgment.

It is not claimed by the plaintiff that he is, under the circumstances, entitled to subrogation by operation of law and as a matter of right. His assignor, Mrs. Werk, does not fall within any of the classes that are entitled to such subrogation. Sheldon on Subrogation, sec. 3. She had no interest in the land prior to the advance of the money to Mrs. Geiselmann for the payment of the Reinhardt note, and hence she stood in the position of a mere volunteer. *Wade v. Beldmeir*, 40 Mo. 486; *Wooldridge v. Scott*, 69 Mo. 669 ; *Evans v. Halleck*, 83 Mo. 376. The plaintiff does, however, claim that he is entitled to a kind of conventional subrogation resting on an implied agreement. It is held that, where one pays a debt, at the instance of the *debtor*, under such circumstances, that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, *he may, as against the debtor*, be subrogated to the benefits of such security, and of the debt which he has discharged. Sheldon on Subrogation, sec. 247; *Wilson v. Brown*, 13 N. J. Eq. 277; *Caudle v. Murphy*, 89 Ill. 352. That doctrine seems to be recognized *obiter* in *Wolf v. Walter*, 56 Mo. 292, and *Norton v. Highleyman*, 88 Mo. 621 ; but is, to say the least, doubtful in its application to a case where the creditor takes or relies on new security ( *Brown v. Lindsay, supra* ), unless the new security fails for want of contracting capacity in the mortgagor. *Snelling v. McIntyre*, 6 Abbott, New Cas. 469. The difficulty of applying that rule to the facts in this case is, that Mrs. Geiselmann was not the debtor of Reinhardt ; and that, even if she were, the plaintiff seeks subrogation not only as against her, but also against her children who have a homestead right in the premises, which Mrs. Geiselmann could not affect by anything she did.

We have treated the case so far, as if it were an action brought by Mrs. Werk, and as if she were the

substantial party in interest, which she may be in effect, although the record shows that she sold out to the plaintiff by a quitclaim deed. But the plaintiff does not even occupy as favorable a position as Mrs. Werk. He loaned $600 to Mrs. Werk, which was part of the $1,600 loaned by Mrs. Werk to Mrs. Geiselmann; but in making that loan, as appears by his own evidence, he relied solely on Mrs. Werk's individual responsibility, and not on the security of the land. The sale under the deed of trust took place on April 30, 1888, and was recorded May 2, 1888, and Mrs. Werk's deed to him was not made until January 8, 1889. At the time when he bought, the record fully disclosed the state of the title which he bought; consequently, it is difficult to see how he can even rely upon a mistake of fact.

While the case unquestionably presents features of hardship, we are unable to find that such hardship was caused by the fraud of Mrs. Geiselmann. It is the simple result of the neglect of Mrs. Werk to ascertain the value of the security offered to her and claimed by her before she parted with her money, and the result of the neglect of the plaintiff to ascertain the state of the title when he bought. Such being the case, we can find no well-recognized equity principle upon which the decree under the facts found by us can be supported. We cannot make the law so as to make it harmonize with a result which we might consider just, as such a practice would necessarily substitute the conscience of each individual judge for recognized rules of decision, and is wholly foreign to our judicial methods, whether the action be at law or in equity.

The judgment is reversed; but, as one of the judges of the court is of opinion that the decision herein made is opposed to the decision of the supreme court in *Griffith v. Townley*, 69 Mo. 13, the case will be certified to the supreme court for final determination. All the judges concur.